Kevin S. PETERS, Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.

Civ. No. C–91–1067 SAW (FSL).

United States District Court, N.D. California.

March 4, 1993.

---

Thomas Edward Wall, Culver City, CA, for plaintiff Kevin S. Peters.

John Lockley, San Francisco, CA, for defendant Life Ins. Co. of North America.

## MEMORANDUM AND ORDER

LANGFORD, Chief United States Magistrate Judge.

On March 4, 1993, this Court considered memoranda submitted on the papers by the parties pursuant to Local Rule 220–1 to determine the standard of judicial review in this ERISA case.

After considering the papers submitted and the record in the case, the Court rules that the standard of review in this case is a de novo trial in which new evidence may be admitted. The Court's ruling is based on the following:

## BACKGROUND

Plaintiff was hired by Defendant San Francisco Federal Bank (SFFB) on October 3, 1988. Defendant's disability benefits program limits certain disability claims made during the first twelve months (the "limitation period") after the effective date of the program. The effective date for Plaintiff was February 1, 1989. The limitation is based on three questions:

1. Did the claimed disability begin during the limitation period?

2. Did the insured receive medical treatment, medication or advice during the ninety days prior to the beginning of the limitation period (in this case November 3, 1988 through January 31, 1989)?

3. Were any of the conditions for which the insured received medical attention during the ninety day period a condition that caused or resulted in the claimed disability?

If the answer to all three questions is "yes," the plan allows the insurer to deny the disability benefits claim.

Plaintiff filed a claim for disability benefits due to Hodgkin's Disease on March 1, 1990. Plaintiff admits this disability began during the limitation period, so the answer to question one is "yes." The parties also agree that Plaintiff received medical attention during the ninety day period in question, so the answer to question two is "yes."

However, the parties disagree on the answer to question three, specifically which conditions the Plaintiff was treated for during the ninety day period ending January 31, 1989 and whether those conditions caused or resulted in his Hodgkin's Disease.[1]

Defendant denied Plaintiff's claim on September 7, 1990 and the appeal on January 28, 1991. The denials were based on the policy's pre-existing condition limitation, citing medical treatment Plaintiff received in the month of January, 1989.

On April 4, 1991, Plaintiff filed this action seeking declaratory relief and allegedly un-

---

1. Defendant argued at Summary Judgement that Plaintiff was treated for facial cellulitis, fever and jaundice, axillary lymphadenopathy, aural chondritis and HIV. Plaintiff argued that he was treated only for facial cellulitis and hepatitis during the ninety day period. *Peters v. Life Ins. Co. of North America,* 93 Daily Journal D.A.R. 1702, 1703 n. 5, 1992 WL 322293.

paid and owing disability benefits, plus interest. This action is governed by The Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. sec. 1001 *et seq.*

The record before the plan administrator at the time Plaintiff's claim was denied does not include any physician reports that directly address whether Plaintiff's medical conditions for which he received treatment during the crucial ninety day period are related to his Hodgkin's Disease.[2]

## ANALYSIS

### ABUSE OF DISCRETION STANDARD

■ Defendant maintains that in ERISA cases the proper standard of review for this court is whether the plan administrator abused its discretion. Judge Weigel, in his order denying Defendant's motion for summary judgement, determined per the criteria set out in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), that "this court must exercise *de novo* review of the plan administrator's denial of benefits." *Peters v. Life Ins. Co. of North America*, 93 Daily Journal D.A.R. 1702, 1703, 1992 WL 322293 (N.D.Cal. 1992).[3] Thus, the law of the case in this matter makes it clear that only the scope of the de novo review is at issue.

### SCOPE OF DE NOVO REVIEW

■ The Supreme Court in *Bruch* did not define what it meant by de novo review, leading to a three-way split among the circuits as to the scope of such review. The Ninth Circuit has not addressed this issue.

Defendant argues that any de novo review of an ERISA case must be limited to a review of the record that was before the plan administrator, rather than a de novo hearing in which new evidence is admitted.

In support of its position Defendant cites *Perry v. Simplicity Engineering*, 900 F.2d 963 (6th Cir.1990). The Sixth Circuit limited de novo review to the record. *Id.* at 966. That court concluded that Congress did not intend federal district courts to "function as substitute plan administrators.... [contrary to] the goal of prompt resolution of claims by the fiduciary under the ERISA scheme." *Id.*

However, *Perry* does not take into account the fact that this court is compelled to reach the substantive issue of whether plaintiff is entitled to benefits and to develop an adequate record before the court for making such a determination.

The Eleventh Circuit has reached a different conclusion from the Sixth Circuit in *Perry:* namely that de novo review permits a court to consider evidence that was not before the plan administrator. *Moon v. American Home Assur. Co.*, 888 F.2d 86 (11th Cir.1989). The Eleventh Circuit held a review limited to the record "is contrary to the concept of a de novo review." *Id.* at 89.

Defendant, as the Sixth Circuit did, cites to *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) for support. There the Supreme Court held de novo review by a district court of a magistrate's recommendation on motions to suppress in certain criminal cases is to be limited to a

2. The record indicates the Defendant did not consult its own physician until May 7, 1991, more than a month after Plaintiff filed suit. Declaration of Wayne Whitmore, Exhibit A, p. 1.

3. The Supreme Court in *Bruch* held a denial of benefits challenged under 29 U.S.C. sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan. *Bruch*, 489 U.S. at 113–15, 109 S.Ct. at 956. There is a split among the circuits as to whether the *Bruch* holding for de novo review was referring only to disputes over plan terms, which was the issue before the Supreme Court, or applied as well to factual dis-

putes. *Pierre v. Connecticut General Life Ins. Co.*, 932 F.2d 1552, 1557–59 (5th Cir.1991) holding that de novo review of ERISA cases does not apply to factual disputes, *cert. denied*, —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991), Justices White and Blackmun dissenting. *Compare with Luby v. Teamsters Health, Welfare and Pen. Tr. Funds*, 944 F.2d 1176, 1183 (3rd Cir. 1991); *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210, 1213–14 (4th Cir.1990); in dicta, *Petrilli v. Drechsel*, 910 F.2d 1441, 1446 (7th Cir.1990). The Ninth Circuit has not addressed this issue. However, since the only disputes in this case are factual, implicit in Judge Weigel's order is that de novo review applies to the factual issues of this case.

review of the evidentiary record before the magistrate.

Defendant's citation of the deferential de novo review in *Raddatz* is not helpful. As one circuit noted, "[p]lan administrators are not governmental agencies who are frequently granted deferential review because of their acknowledged expertise. Administrators may be lay persons appointed under the plan, sometimes without any legal, accounting or other training...." *Luby v. Teamsters Health, Welfare, and Pen. Tr. Funds*, 944 F.2d 1176, 1183 (3rd Cir.1991).

The Third Circuit charted a middle approach in *Luby*. That court held a strict rule barring new evidence "makes little sense," but when the record is sufficiently developed "... the district court may, in its own discretion, merely conduct a de novo review of the record of the administrator's decision, making its own independent benefit determination." *Id.* at 1184–85.[4]

Prior to *Bruch*, federal courts had adopted the arbitrary and capricious standard of review for ERISA cases. *Bruch*, 489 U.S. at 108–10, 109 S.Ct. at 953. The rigid *Perry* view, limiting review to the record, makes sense under a standard where a decision based on an inadequate record could justify a finding that a plan administrator was arbitrary and capricious. However, the restrictive approach to de novo review adopted in *Perry* seems contrary to the Supreme Court's warning in *Bruch* that "... the threat of increased litigation is not sufficient to outweigh the reasons for a de novo standard that we have already explained." *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956.

Now that the Supreme Court has held that cases such as the one at issue must be judged de novo, the rigid rule favored in *Perry* does not make sense. In a case such as this one, where the record contains numerous and possibly conflicting medical terms and diagnoses, excluding new evidence would force this court to become its own medical expert.

Neither is it helpful to apply an equally rigid rule allowing new evidence in all de novo reviews of ERISA cases, as per *Moon*. Nothing in *Bruch* requires a trial court to admit evidence if it is irrelevant, redundant or cumulative.

In cases where the administrative record is sufficiently developed, limiting de novo review to the administrative record would further judicial economy, yet allow a trial court to comply with the requirements implicit in a de novo determination.

This court adopts the *Luby* approach. Implicit in the Supreme Court's requirement of a de novo review is that a trial court must review an adequate record and then rule on the merits. Leaving the scope of de novo review up to the discretion of the trial court, based upon the sufficiency of the record, allows a court to admit new evidence when necessary, yet accommodates legitimate concerns for judicial economy.

## SUFFICIENCY OF THE RECORD

■ How should the court decide whether the record in this case is sufficient? In this district's only published case on this issue the court exercised its discretion to limit the scope of review to the record before the administrator. *James v. Equicor, Inc.*, 791 F.Supp. 804, 808 (N.D.Cal.1992). The question was whether the plaintiff was qualified for long term disability benefits. The record before the administrator contained reports from plaintiff's two treating physicians, a report by the plan's physician and from an outside consultant. *Id.* at 808. All reports concluded the plaintiff could work and the defendant was granted summary judgement. *Id.* at 809.

Plaintiff's case is factually distinguishable from *James*. The record indicates that, unlike the plan administrator in *James*, Defendant acted without any medical reports directly addressing what Defendant itself identified as an important factual issue: whether Plaintiff's January, 1989 medical treatment

---

4. Two circuits have allowed new evidence in cases where a district court has conducted a de novo review of the interpretation of the terms of a plan. *Masella v. Blue Cross and Blue Shield of Conn.*, 936 F.2d 98, 105 (2nd Cir.1991); *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 642 (5th Cir.1992).

was related to his Hodgkin's Disease.[5] Defendant's own doctor did not review the record prior to the denial of benefits.

This court cannot make a determination based on the record alone. Without sufficient medical reports in the record, this court must exercise its discretion and allow further testimony to aid in its determination.

### CONCLUSION

This court finds that, for the reasons stated above, the standard of review for this case is a de novo trial in which new evidence may be introduced by the parties and considered by the court.

---

**5.** The record indicates Defendant tried three times to get one of Plaintiff's physicians, Dr. Joe L. Ruiz, to report on whether medical treatment Plaintiff received during the ninety day time period was related to Hodgkin's Disease. Declaration of Wayne Whitmore, Exhibit A, pp. 113, 116, 129. There is no record of a response to this question by Dr. Ruiz. (Dr. Ruiz did inform Defendant that the first time he saw the Plaintiff was on September 26, 1989, well after the ninety day period in question. Declaration of Wayne Whitmore, Exhibit A, p. 193.) Further, nothing in the record indicates Defendant posed the above question to any of the physicians who actually treated Plaintiff during the ninety day period running from November 3, 1988 through January 31, 1989.