Catherine **CRYTZER**, Plaintiff,

v.

**AMERITECH CORPORATION,**
**Defendant.**

No. 1:97–CV–785.

United States District Court,
N.D. Ohio,
Eastern Division.

May 12, 1998.

---

Ronald Paul Friedberg, Law Offices of Anne L. Meyers & Associates, Woodmere Village, OH, for Plaintiff.

Cynthia C. Schafer, Cleveland, OH, for Defendant.

## FINDINGS OF FACT

## CONCLUSIONS OF LAW

GWIN, District Judge.

On May 6, 1998, this cause came on for trial before the Court, the parties having waived their right to a jury trial. After hearing the evidence and observing the demeanor of the witnesses, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. This is an action for severance benefits pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), particularly 29 U.S.C. § 1132(a)(1)(B).

2. This Court has jurisdiction over this action under Title 28, United States Code, § 1331 and Title 29, United States Code, § 1132(e)(1).

3. In her first cause of action, Plaintiff Catherine Crytzer seeks severance benefits under Ameritech's Management Separation Benefit Plan ("the Plan"). In her second cause of action, Plaintiff Crytzer seeks a declaratory judgment stating she is entitled to severance benefits under the Plan.

4. Defendant Ameritech Corporation says Plaintiff Crytzer did not satisfy the Plan's eligibility criteria.

5. Before her December 1995 termination, Plaintiff Crytzer worked for Ameritech's Information Industry Services business unit in Cleveland, Ohio. Mr. Thomas Newell supervised her.

6. Defendant Ameritech employed Plaintiff Crytzer from May 1970 until December 1995. In December 1995, Defendant Ameritech ended Crytzer's employment. After that, Crytzer sought severance benefits under the Plan.

7. On June 18, 1996, Ameritech attorney, Ms. Francine Soliunas, wrote to Plaintiff Crytzer's attorney, Mr. Ronald Friedberg. In her letter, Soliunas explained why Plaintiff Crytzer was not entitled to benefits under Defendant Ameritech's Plan. The letter said, in pertinent part:

> Your client, Ms. Catherine Crytzer, had originally announced her decision to retire in early 1995. At that time, a replacement was sought for her and one of her customers held a retirement party for her on the assumption that she would be leaving in mid 1995. She then changed her mind and indicated she was not retiring. Since her position was still available, Ameritech honored her decision to remain with the Company.

8. While employed with Defendant Ameritech, Plaintiff Crytzer was generally viewed as a good employee. She consistently received good or excellent performance reviews.

9. From 1992 until her termination in late 1995, Plaintiff Crytzer was responsible for providing service to Ameritech customer,

Communications Buying Group ("CBG"). CBG was a high-profile, multi-million dollar account that grew rapidly from 1993 through 1995. CBG's growth continued after Crytzer left Ameritech. · Specifically, CBG's account grew from 13,479 lines in June 1995, to 26,-018 lines in November 1996, almost doubling in size during this period.

10. In early 1995, Plaintiff Crytzer discussed her possible retirement with her supervisor, Thomas Newell. She described unhappiness with her principal customer and with her work. At trial, Newell testified that in January or February of 1995, Crytzer "said that she was going to retire, she said she hates this place and I'm sick of it."

11. In response, Newell sought and received permission to hire a replacement for Plaintiff Crytzer. In July of 1995, Newell hired Lois Poulton. Newell previously supervised Poulton in another division of Ameritech. Hiring Poulton put Newell over his allowed quota of employees in the department. Despite this, Newell employed Poulton to ensure that Ameritech provided CBG with continuous support.

12. With Plaintiff Crytzer present, Newell introduced Poulton to CBG representatives as Crytzer's replacement on the account. Also, with Crytzer present, Newell told co-workers of Plaintiff Crytzer's decision to retire.

13. For some period, Plaintiff Crytzer was assigned to work with Poulton to help her become familiar with the CBG account. After that, Newell assigned Crytzer to other responsibilities. Newell wanted to avoid confusing CBG about which Ameritech employee was responsible for the account.

14. During 1995, Plaintiff Crytzer's job with Ameritech was not moved to a different location.

15. During 1995, Plaintiff Crytzer's job responsibilities did not change in any way that left her unskilled for her position.

16. During 1995, Plaintiff Crytzer's job responsibilities were not "outsourced" to a non-Ameritech individual or firm, nor were Crytzer's responsibilities shifted to another Ameritech work group. All of Plaintiff Crytzer's job duties were still being performed at Ameritech's Information Industry Services business unit.

17. During 1995, Ameritech's Information Industry Services business unit did not restructure its operations in either the Cleveland office or elsewhere within the company.

18. In July 1995, Plaintiff Crytzer contacted the Ameritech Benefits Center and applied to receive materials for retirement. A Benefits Center representative told Crytzer that Ameritech's retirement policy permitted her to submit her paperwork, and if necessary, later change her mind about retiring up to one day before the effective date. Plaintiff Crytzer did not complete or return the paperwork to the Benefits Center.

19. On or about September 8, 1995, Plaintiff Crytzer told Newell that she did not wish to retire. Newell testified credibly that he would not have hired a replacement if he knew that Plaintiff Crytzer was not planning to retire.

20. In the fall 1995, Defendant Ameritech needed to reduce one employee. At that time, Newell was over budget for employees because Plaintiff Crytzer had decided not to retire, as anticipated.

21. Near October 16, 1995, Newell told Plaintiff Crytzer that she would be separated from employment.

22. Two months later, on or about December 31, 1995, Defendant Ameritech terminated Plaintiff Crytzer from her position at Ameritech.

23. Shortly after being terminated, Plaintiff Crytzer applied for severance benefits under the Plan.

24. On August 15, 1996, the Plan's claims administrator, Ms. Ellen Friedman, denied Plaintiff Crytzer's application for benefits under the Plan. Friedman maintains that Crytzer was not eligible to receive Plan severance benefits.

25. The Plan specifies conditions for receipt of severance plan benefits. In relevant part, the Plan says:

Employees who are terminated from employment will be eligible to become Participants in this Plan and for payments under

this Plan if: (i) they terminate employment at the request of the Company on or after January 1, 1995, for any of the following reasons: relocation of work, content changes in positions resulting in a skill mismatch, consolidation of positions or functions, process redesign, or other Company-initiated restructuring. . . .

26. Plaintiff Crytzer contends that she is entitled to benefits under the Plan because of Defendant Ameritech's "consolidation of positions or functions."

27. Given Plaintiff Crytzer's tenure of 25–plus years of service when Ameritech terminated her, Crytzer's Plan benefits would be 50% of her 1995 base salary ($51,400.00), or $25,700.00. Crytzer would also receive cash benefits for unpaid vacation, floating holidays, personal days, Cobra and partial tuition assistance.

28. Plaintiff Crytzer timely appealed Friedman's denial of benefits to the Ameritech Severance Plan Committee ("the Committee"). Crytzer's appeal to the Committee was done in accordance with the appeal process set forth in Defendant Ameritech's Plan procedures.

29. Before the Committee's review of Plaintiff Crytzer's appeal, Committee employee Kathy Landoff investigated Crytzer's case and prepared a case summary for the Committee. Though Plaintiff Crytzer was never interviewed, she was permitted to make written submission to be considered by the Committee.

30. On January 17, 1997, the Committee gathered in Chicago to consider Plaintiff Crytzer's appeal. The Committee considered the Plan Secretary's case summary together with Crytzer's written submissions. Plan Secretary Meginnes recommended to the Committee that Crytzer's appeal be denied.

31. That same day, the Committee voted to uphold Friedman's decision to deny Crytzer severance benefits under the Plan. The Plan Secretary, Mr. Timothy J. Meginnes, informed Plaintiff Crytzer of the Committee's decisions by letter dated February 10, 1997.

32. In Meginnes's letter to Plaintiff Crytzer's attorney, Plan Secretary Meginnes wrote:

> After reviewing all the facts and circumstances, the Committee determined that Ms. Crytzer's termination was not due to relocation of work, content changes in positions resulting in a skill mismatch, consolidation of positions or functions, process redesign or other Company-initiated restructuring. Accordingly, the Committee concluded that Ms. Crytzer was not entitled to receive benefits under the MSBP. I have included a copy of the pages from the MSBP that are referenced in the above paragraphs.

> The Committee further concluded that Ms. Crytzer's termination was the result of the Company's response to Ms. Crytzer's announced intention to retire at the end of 1995 which resulted in the hiring of a replacement for Ms. Crytzer's position as service manager for a multi-million-dollar customer. The Committee also noted that it has been Ameritech's general policy that employees can change their minds and cancel their retirements up to the day before their pensions become effective. However, the policy does not guarantee a position to an employee who changes his/her mind if the Company has already hired a replacement based on the employee's announced intention to retire.

33. Plaintiff Crytzer brought this action contesting the Plan's decision denying her severance benefits.

CONCLUSIONS OF LAW

1. Under ERISA, Plaintiff Crytzer may bring an action to recover benefits due her under the Plan. 29 U.S.C. § 1132(a)(1)(B).

2. Where an ERISA plan gives an administrator the discretion to interpret its terms, the administrator's interpretation must be upheld unless it is arbitrary and capricious or unreasonable. *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998); *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997).

3. Here, the Plan gives discretionary authority. The Plan states::

The Committee shall have final, binding and conclusive discretionary authority with respect to interpretation, administration, and eligibility under the Plan and its decisions shall not be subject to further review.

■ 4. In deciding whether an ERISA plan administrator's application of plan benefits was arbitrary and capricious, this Court must review only those materials presented to the administrator and its appeals committee. *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991).

■ 5. When applying the arbitrary and capricious standard to cases involving a denial of ERISA benefits, this Court must also decide whether plan administrator's decision was rational in light of plan's provisions. *Id.* at 984. When it is possible to offer a reasoned explanation, based on evidence, for particular outcome, that outcome is not arbitrary or capricious. *Smith,* 129 F.3d at 863.

■ 6. After observing the demeanor of the witnesses, the Court concludes that the Committee's decision upholding the denial of Plaintiff Crytzer's severance benefits was rational in light of the Plan's provisions and the evidence before the Committee. The Committee could reasonably find that Defendant Ameritech did not terminate Plaintiff Crytzer because of a "consolidation." The Committee could also reasonably find that Ameritech assigned Poulton to work with Plaintiff Crytzer only during the limited time needed to familiarize Poulton with the CBG account. The Committee could further reasonably find that Ameritech never intended to have two employees continually or permanently assigned to the CBG account. Defendant Ameritech did not consolidate positions.

7. Accordingly, the Court concludes that the Committee acted reasonably in upholding the denial of severance benefits to Plaintiff. *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966–67 (6th Cir.1990). See also *Peruzzi,* 137 F.3d at 431, 433; *Smith,* 129 F.3d at 863–64.

8. For the reasons set forth above, the Court gives Defendant Ameritech judgment.

Each party shall bear their own fees, costs and expenses.

IT IS SO ORDERED.